[Civ. No. 8902. Third Dist. Sept. 11, 1957.]

CHARLES A. EDGETT et al., Appellants, v. EDWIN G. FAIRCHILD et al., Respondents.

Bradford, Cross, Dahl & Hefner for Appellants.

Desmond, McLaughlin & Russell for Respondents.

VAN DYKE, P. J.—This is an appeal by plaintiffs Calvin Sanborn, Arlene Sanborn, Charles A. Edgett and Marian Edgett from a judgment entered after a jury verdict in favor of the defendants in an action to recover damages for personal injuries and property damage sustained by plaintiffs as a result of an intersection accident.

The accident occurred shortly after 6 p. m. on February 9, 1954, at the intersection of Citrus Road and County Dump Road in the County of Sacramento. Citrus Road is a two-lane paved level highway about 22 or 25 feet wide. It runs north and south. Citrus Road is intersected, but not crossed, by County Dump Road from the east. The latter is a narrow graveled road. On the west side of Citrus Road just off the west edge of the highway directly across from the County Dump Road there is a 4 by 5 foot sign painted with a black background and bearing the words "Free Dump" in white. The sign also has an arrow pointing directly at the County Dump Road. At the time of the accident the weather was misty, otherwise described as a high fog. It was getting dark, but visibility was clear. Appellants Calvin and Arlene Sanborn, and Marian Edgett, were traveling south on Citrus Road in an automobile owned by the Edgetts. Ahead of them was respondent Edwin G. Fairchild who was driving a pickup truck south on the same road. Appellants, whose car was traveling at a speed of about 40 or 45 miles an hour, were overtaking the truck which was being driven about 30 or 35 miles an hour. Respondent testified that at the time his headlights and taillights were lighted; that as he drove down Citrus Road he became aware of the lights on appellants' vehicle; that their car was gradually overtaking his; that

he commenced giving a signal for a left turn shortly after he reached a rise in Citrus Road approximately one-fourth mile north of the intersection; that he slowed down as he approached the intersection; that he commenced to turn when his truck was 5 or 10 feet north of the intersection; that he became aware of the fact that appellants were trying to pass; that at that point his truck was "just crossing the broken center line of Citrus Road" at which point he immediately applied his brakes and stopped "in about one foot." His truck stopped with the left front portion of the vehicle over the center line of the intersection. He said, "He went on by me and sideswiped the power pole." There was no collision of the two vehicles. The pole which appellants' car hit was located about 20 or 25 feet south of the County Dump Road and 12 to 16 feet east of the east shoulder of Citrus Road.

Appellants' evidence was that they began to pass respondent approximately 250 or 300 feet north of the intersection; that the driver sounded his horn as he started to pass; that no turn signal had been given by respondent nor did he reduce his speed; that as appellants were in the act of passing respondent's truck, and at a time when the front wheels of their car were even with the rear wheels of the truck, respondent suddenly stuck out his hand from the top of his window and made an abrupt left turn; that the driver of the automobile quickly turned to his left, avoiding a collision, but the automobile slid off of the road and hit the power pole.

Calvin Sanborn, the driver of the automobile in which the appellants were riding, testified that he had driven over Citrus Road quite a few times; that he had used the County Dump Road several times; that he was aware as he drove along that the County Dump Road intersected Citrus Road at some point ahead; that at the time he did not recall the precise point of the intersection; that he was unable to see the County Dump Road when passing respondent's truck; that he did not see the sign at the west side of Citrus Road; that as he was passing the truck Mrs. Edgett screamed; that he turned his wheel to his left and the car went out of control and off of the highway and hit the pole.

It was stipulated at the trial that any negligence on the part of Calvin Sanborn was imputable to all the appellants.

Appellants allege that the trial court erred by not giving

certain instructions proffered by them. ■ Preliminarily it should be pointed out that each party is entitled to have his theory of the case submitted to the jury in accordance with the pleadings and proof and it is incumbent upon the trial court to instruct on all material issues involved. ■ In determining whether or not the evidence supports the theory of the requested instruction an appellate court must view the evidence in the light most favorable to the party offering the instruction. (*Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630 [255 P.2d 795].)

■ The first instruction which appellant claimed should have been given was BAJI Number 137 on the doctrine of sudden peril. It was appellants' theory that respondent Fairchild did not give a left-turn signal until appellants' driver Sanborn was in the process of passing Fairchild's truck and that Fairchild then made an abrupt left turn into Sanborn's path; that this conduct of Fairchild was negligent and proximately caused the accident. The stated evidence substantially supported this theory. But Fairchild had testified that although he began a turning action he became aware that Sanborn was going to pass in the intersection and stopped his truck quickly so that the front of his vehicle was only a little way over the center line. There was further evidence that Sanborn could still have passed without colliding with the truck. It could have been contended by respondents, therefore, that even if Sanborn had been without negligence in attempting to pass when he did that he was negligent in suddenly turning his vehicle unnecessarily so as to cause it to leave the road. To rebut this possible contention appellants were entitled to have an instruction on the doctrine of imminent peril. Although that doctrine requires that one invoking it must have been free from negligence placing him in the orbit of peril, we think that the jury could have found this requirement was satisfied even though Sanborn was passing at an intersection in violation of Vehicle Code, section 530, subdivision (b)2, which prohibits driving on the left-hand side of the road when approaching or within 100 feet of or when traversing an intersection. Whether Sanborn was negligent in attempting to pass Fairchild's truck at the intersection was a question for the jury under the facts of this case. The intersection was not illuminated; there was no regulation intersection sign. There was testimony to the effect that it was a difficult intersection to see, that it was getting dark and that Sanborn thought it was farther down

the road. Under such circumstances the jury might have excused Sanborn for violating the statute which forbids passing at an intersection. (*McEachen* v. *Redmond,* 150 Cal.App.2d 546 [310 P.2d 122].) We hold that appellants were entitled to an instruction on the doctrine of sudden peril. (*Leo* v. *Dunham,* 41 Cal.2d 712 [264 P.2d 1] ; *Fischer* v. *Keen,* 43 Cal.App.2d 244 [110 P.2d 693] ; *Kohlhauer* v. *Bronstein,* 21 Cal.App.2d 4 [67 P.2d 1078].)

The second instruction which appellants claim should have been given reads as follows:

"It has been admitted that plaintiff Calvin H. Sanborn knew that the County Dump Road did enter Citrus Road.

"If you should find that said plaintiff forgot the precise point at which said County Dump Road entered Citrus Road, you are instructed that to so forget is not negligence unless such forgetting amounted to the failure to exercise ordinary care."

This instruction was properly refused. There was no proof that Sanborn had forgotten either that the County Dump Road did intersect Citrus Road or that he had "forgotten" the precise point of the intersection. He testified that he knew the County Dump Road intersected Citrus Road at some place ahead of him but he did not know just where that point was as he drove along Citrus Road. There is here no forgetfulness of a known danger. His testimony shows he knew the danger was ahead, although he lacked knowledge of its exact location, so he started to pass. This was calculated risk.

The third instruction offered by the appellants which they assert should have been given instructed the jury that a violation of the Vehicle Code was not negligence unless it showed a failure on the part of the driver to exercise ordinary care at the time and place in question and that the jury could not find in favor of the respondent on his affirmative defense of contributory negligence if the jury found that the driver was using ordinary care. While the court refused the instruction requested, it did instruct the jury on the effect of a violation of a statute, and as to how the presumption of negligence could be overcome, by giving BAJI Instructions Numbers 149 and 149-B. This was sufficient and it was not necessary to give the instruction offered by appellants.

Notwithstanding the refusal to instruct on sudden peril we cannot reverse against the constitutional mandate that no judgment may be reversed for error in instructions

unless the reviewing court shall be of the opinion, based on the whole record, that the error has resulted in a miscarriage of justice. The burden is on the appellant in every case to show that error, if committed, was prejudicial, that is, that it resulted in a miscarriage of justice. Consideration of the entire cause, including the evidence as presented by the record, falls short of leading us to the opinion that failure to give the instruction on imminent peril resulted in a miscarriage of justice. Hence any error in refusing to give the instruction does not appear to be prejudicial and does not justify a reversal. (*Cucinella* v. *Weston Biscuit Company, Inc.*, 42 Cal.2d 71, 82-83 [265 P.2d 513].)

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied October 8, 1957.