[Civ. No. 20295. First Dist., Div. One. Feb. 18, 1963.]

HELEN HOOK, Plaintiff and Appellant, v. POINT MON-
TARA FIRE PROTECTION DISTRICT et al., De-
fendants and Respondents.

98

McMurray, Walker & Tepper and Doris Brin Walker for Plaintiff and Appellant.

Ropers, Majeski & Kane, Ropers, Majeski & Phelps and Cyril Viadro for Defendants and Respondents.

MOLINARI, J.—This is an appeal by the plaintiff from a judgment for the defendants, following a jury verdict, in a personal injury action. The sole question on appeal is whether the trial court erred in giving an instruction on assumption of risk. The attack is made upon the propriety of the giving of the instruction and not upon the correctness of its content.

### THE RECORD

The following facts are undisputed: Plaintiff, Hook, was injured when she fell while entering through a door in a fire station maintained by the defendant fire district. She was entering said premises for the purpose of voting in a bond election conducted by the defendant school district. The voting place was in a room adjoining the fire station through which the voters were required to pass in order to gain access to such room. A walkway approaching said door had a step up of 3 inches. The floor level inside the fire station was 9 inches

lower than the threshold. There were no signs posted warning of the 9-inch difference in level. At the entry door in question there was a sign with the words ''Vote Here,'' and below it an American flag. The plaintiff had never been in the fire station previous to this occasion.

There is a conflict with respect to the following facts: The plaintiff testified that the room she was entering from the outside, and in which she suffered the fall which is the basis of this action, was not lighted. The defendants adduced evidence that it was lighted. The plaintiff also testified that the door leading into the room in question was closed when she approached it and that she had to open it in order to enter. The defendants' evidence indicated that the door was open. Witnesses produced by the defendants testified that the plaintiff was looking back over her shoulder talking to her husband as she went through the door. The plaintiff, on the other hand, stated that she was looking in the direction in which she was walking as she went through the door.

Each of the defendants pleaded the defense of assumption of risk in its answer.

### Assumption of Risk

At the outset we must take cognizance of the rule that a party has a right to proper instructions on every material issue of fact upon which he relies, in accordance with the pleadings and proof, when there is substantial evidence to support his theory of the case. (*Stickel* v. *Durfee,* 88 Cal.App.2d 402, 406 [199 P.2d 16]; *Edgett* v. *Fairchild,* 153 Cal.App.2d 734, 738 [314 P.2d 973].) In determining whether or not the evidence supports the theory of the requested instruction, a reviewing court must view the evidence in the light most favorable to the party offering the instruction. (*Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 633 [255 P.2d 795]; *Edgett* v. *Fairchild, supra,* p. 738.)

''The doctrine of assumption of risk is based on the theory that there has been a voluntary acceptance of a risk, and such acceptance, whether express or implied, requires knowledge and appreciation of the risk.'' (*Hayes* v. *Richfield Oil Corp.,* 38 Cal.2d 375, 384 [240 P.2d 580]; *Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 161-162 [265 P.2d 904]; see Rest., Torts, § 893, p. 491; Prosser on Torts (2d ed. 1955) § 55, pp. 303-314.) This theory is different than that upon which contributory negligence is based. While the two theories may arise under the same set of facts they differ in essen-

tials. Contributory negligence arises from a lack of due care and will be found where it appears that the plaintiff should or could have discovered the danger by the exercise of ordinary care. The defense of assumption of risk, on the other hand, will negative liability when the conditions requisite for its application are present, regardless of the fact that the plaintiff may have acted with due care. (*Prescott* v. *Ralphs Grocery Co., supra,* p. 161; *Martin* v. *Stone,* 187 Cal.App.2d 726, 730-731 [10 Cal.Rptr. 184].)

It is now well established in California that the doctrine of assumption of risk has two requisite elements: (1) Knowledge and appreciation of the *danger* involved by the person in question; and (2) his voluntary acceptance of the risk. (*Gomes* v. *Byrne,* 51 Cal.2d 418, 420 [333 P.2d 754]; *Prescott* v. *Ralphs Grocery Co., supra,* p. 162.) It is also firmly established that such knowledge must be *actual* knowledge. (*Hayes* v. *Richfield Oil Corp. supra,* 38 Cal.2d 375, 385; *Prescott* v. *Ralphs Grocery Co., supra,* p. 162; Gomes v. *Byrne, supra,* p. 421; *Guerrero* v. *Westgate Lumber Co.,* 164 Cal.App.2d 612, 618 [331 P.2d 107]; *Martin* v. *Stone, supra,* p. 731; *Rostant* v. *Borden,* 192 Cal.App.2d 594, 598 [13 Cal.Rptr. 553].) Such knowledge, however, may be inferred from the proved facts and circumstances. (*Gomes* v. *Byrne, supra,* p. 421; *Rostant* v. *Borden, supra,* p. 598.)

We now turn to the circumstances of the instant case. Our first consideration is the determination of what constituted the danger or the risk. The plaintiff says it is the fact that the threshold of the door was 9 inches above the floor level immediately inside the door. The defendants, on the other hand, assert that the danger was the risk incidental to the plaintiff's not using her eyes, the risk inherent in entering a place of darkness, or, dependent upon the evidence which the jury chose to believe, the risk of walking with her head turned into a lighted but unfamiliar room. In essence the defendants argue that the plaintiff was not required to know the exact nature of the hazard she might encounter, but that the knowledge required by the doctrine consists of the awareness that *some* danger might be encountered if she didn't use her eyes, or if she proceeded into unfamiliar darkness, or if she walked into a lighted room while looking back over her shoulder.

We are thus projected to the question as to whether the danger or risk contemplated by the doctrine of assumption of risk is a specific or particular one. In *Ziegler* v. *Santa Cruz*

*etc. School Dist.*, 193 Cal.App.2d 200 [13 Cal.Rptr. 912], the reviewing court was of the opinion that knowledge of the specific danger is not necessary. On the other hand, the appellate court in *Guerrero* states: "Actual knowledge of the existence of a specific danger is an essential and indispensable element of the defense of assumption of risk." (164 Cal.App.2d at p. 618.) The latter case relies upon Prosser, who defines the rule of assumption of risk as follows: "The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from *a particular risk*." (P. 303; italics added.) The rationale of assumption of risk is explained by Prosser thusly: " 'Knowledge of the risk is the watchword of assumption of risk.' Ordinarily the plaintiff will not be taken to assume any risk of conditions or activities of which he is ignorant. ▆▆▆ Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself. . . . If because of age, or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it. His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence." (Pp. 309-310.)

▆▆▆ We are impressed by the rule announced in *Guerrero* and the support it finds in Prosser. This rule appear to us to be consistent with the theory of assumption of risk. It not only recognizes the element of knowledge, but it takes cognizance of the element of consent as a basis for the doctrine. Accordingly, we are persuaded that before one can consent to assume a risk he must have knowledge of the particular risk to which he is consenting. It is not enough, therefore, in order to urge the defense of assumption of risk, that one assume a risk of injury in the academic sense. The daily affairs of life are fraught with danger. The prospect of the risk of injury is inherent in the activities of human beings, whether in the home, at work, at play, or in transit. In the legal sense, however, assumption of risk presupposes that one has placed himself in a place of *known* danger with knowledge and appreciation of the risk. These conclusions find support, we believe, in the cases, some of which we shall now discuss.

In *Bee* v. *Tungstar Corp.*, 65 Cal.App.2d 729 [151 P.2d 537], it was held that a business invitee, who entered a bucket of a mine owner's aerial tramway *without knowledge* or means

of knowledge that the traction cable had been improperly spliced, did not assume the risk of the negligence of the owner's superintendent in splicing the cable. The court there held that one who assumes the risk of dangers *ordinarily* incident to the use of an instrumentality does not assume the risk of danger created by the negligence of others in maintaining or operating the instrumentality.

*Guerrero* involved a situation where the plaintiff was struck by a falling log while he was helping to load a logging truck. It was there held to be prejudicial error to instruct on assumption of risk where there was no evidence that the plaintiff knew, or that he must have known, that the last log was likely to fall, that the log appeared to be in danger of rolling off the truck, or that anyone else engaged in loading the truck apprehended any danger from the log that fell.

The facts in *Hidden* v. *Malinoff,* 174 Cal.App.2d 845 [345 P.2d 499], disclose that the decedent stepped out of his automobile onto the main traveled portion of a transcontinental highway in the nighttime, when traffic was heavy, after being warned by his wife not to open the hood of the car, which opened only from the side, and he nevertheless proceeded to walk toward the front of the automobile, turning his back to oncoming traffic. The contention was there made that it was dangerous to walk upon such a highway under such circumstances, that the decedent knew or must have known of this danger and that hence he assumed the risk of injury. In holding that it was prejudicial error to give an instruction on assumption of risk, the reviewing court agreed with the plaintiff's contention that the only dangerous condition material to the defense of assumption of risk arose out of the alleged negligent driving of the defendant, and that there was no evidence from which the jury could have concluded that the decedent knew or must have known of that dangerous condition.

The recent case of *Griffin* v. *Irelan,* 194 Cal.App.2d 844 [15 Cal.Rptr. 306], discloses a factual situation where the plaintiff tenant slipped and fell on a wet cement platform from which the landlord had removed a rubber mat while he washed the platform. Evidence was presented that the tenant knew that the platform was slippery when wet and that she did not look down to determine the condition of the platform as she stepped onto it. The plaintiff testified that she did not know that the mat had been removed. The appellate court concluded it was prejudicial error to give an instruction on as-

sumption of risk on the basis that the plaintiff did not have knowledge and appreciation of the risk, i.e., knowledge that the mat was not in place.

Again, in the more recent case of *Garber* v. *Prudential Ins. Co.*, 203 Cal.App.2d 693 [22 Cal.Rptr. 123], it was held, in a case where a photographer inexperienced in skin diving was drowned while preparing to take photographs of two underwater skin divers, that the defense of assumption of risk was not applicable. The assertion was there made that it is common knowledge that swimming in deep water involves danger, and that people who take to water voluntarily assume that risk. The contention was rejected by the court which pointed out that the danger there consisted of swimming far from shore, carrying strange and heavy equipment, the use of which required knowledge and skill which the decedent did not possess. The decedent had not been informed of the danger nor had he been trained in the proper use of the equipment. Assumption of risk was held not to be applicable because there was no showing that the decedent had knowledge and appreciation of the danger.

*Hayes* involved an invitee situation where a woman fell at night into a grease pit on dimly lighted service station premises. The woman's husband was regular a patron of the station and had taken his wife there on several occasions. The accident took place at 2:30 a.m. The couple had left their car parked in the station and were returning to it along the side of the station building where illumination was not good and objects could only vaguely be distinguished. The husband walked ahead of his wife, and in the darkness she fell into the grease pit. The wife testified she was not aware of the existence of the grease pit, and her husband stated he knew of its location but did not think of it prior to the accident. The refusal of the trial court to give an instruction on assumption of risk was upheld on the basis that the plaintiff wife did not have knowledge and appreciation of the risk. The court there stated the rule to be "that 'before it can be said that one has "assumed the risk" of a *specified* hazard, it must be shown that he had knowledge of the condition creating the hazard.' " (38 Cal.2d at p. 385; italics added.)

In *Prescott*, the plaintiff patron of defendant's grocery store fell on the sidewalk near an entrance to the store. She noticed there was " 'a lot of water' " on the sidewalk and that there was no dry area between the building and the curb through which she could walk. (P. 160.) Upon " 'very care-

fully' '' taking three or four steps on the wet sidewalk, plaintiff slipped on something and fell. (P. 160.) An instruction on assumption of risk was held to have been improperly given because there was no evidence that the plaintiff had actual knowledge and appreciation of the danger. (42 Cal.2d 158.)

The case of *Rogers* v. *Los Angeles Transit Lines,* 45 Cal.2d 414 [289 P.2d 226], presented the factual situation where a passenger on a bus rested his elbow on the sill of an open bus window so that it protruded therefrom. The elbow was struck by the open rear door of a parked truck while the bus was in motion. The defense of assumption of risk was rejected on the basis that plaintiff did not have actual knowledge and appreciation of the danger involved so as to consent to the risk. The reviewing court there stated that the plaintiff was not required to anticipate that the bus company and the truck owner would be negligent. ''Plaintiff could not have assumed the risk at all,'' says the court, ''unless he actually saw that the door of the Langendorf truck was open some time before it struck his elbow and also knew that the bus was being driven too close to it.'' (P. 419.)

By way of illustration of a voluntary exposure to a known specific hazard we have *Gomes,* where a salesman was bitten by a dog. A finding that the plaintiff assumed the risk of being bitten was sustained by evidence that, notwithstanding the dog's display of hostility inside a wire fence with a closed gate, plaintiff elected to leave his place of safety on the public sidewalk outside the fence and to enter on the defendant's closed property. (51 Cal.2d 418.)

We now turn to the factual situation in the present case. The danger here is the 9-inch stepdown at the threshold. The first inquiry, then, is whether the plaintiff had actual knowledge of this danger or whether the facts were such that she must have knowledge of the hazard. The evidence is undisputed that the plaintiff had never before been to the fire station. The plaintiff testified that she was not aware of the stepdown. She testified it was dark and that she could not see the floor. There is no other evidence that the plaintiff saw the stepdown before she fell. The evidence presented by the defendants themselves that the plaintiff was looking behind her as she entered the building would negate knowledge of the 9-inch drop. However, the plaintiff herself testified she was looking in the direction she was walking. This would be an evidentiary circumstance tending to show that she observed what was in the line of her vision. How-

ever, as stated in *Guerrero*: ''It is not enough that the plaintiff should have been aware of that danger. There must be evidence sufficient to show that he was *actually* aware of it.'' (164 Cal.App.2d at p. 618.) Such actual awareness is lacking in the present case. Accordingly, because plaintiff was not actually aware of the danger, the essential element of consent is also absent. It follows that if plaintiff had no knowledge of the danger, she was not in a position to appreciate such danger or to voluntarily accept the risk inherent therein.

An important consideration in this case is the undisputed invitee status of the plaintiff. Insofar as an invitee is concerned, the general applicable principle is that an invitor must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed peril. (*Florez* v. *Groom Development Co.*, 53 Cal.2d 347, 355 [1 Cal.Rptr. 840, 348 P.2d 200].) In respect to this duty on the part of the invitor, the invitee may assume that he may use the area to which the invitation extends without danger, and he is not required to look for hidden traps. (*Florez* v. *Groom Development Co.*, *supra*, p. 357; *Billeter* v. *Rhodes & Jamieson, Ltd.*, 104 Cal.App.2d 137, 144 [231 P.2d 93].) The invitor, on the other hand, is not liable for injury to an invitee from danger which was obvious or should have been observed in the exercise of reasonable care. (*Florez* v. *Groom Development Co.*, *supra*, p. 355.) Accordingly, even though he himself may be negligent, the invitor may escape liability if the invitee has been contributorily negligent or has assumed the risks of injury, or both. The defense of contributory negligence arises only from lack of due care, while the defense of assumption of risk, as we have pointed out above, will negative liability regardless of the fact that the plaintiff may have used due care. (*Prescott* v. *Ralphs Grocery Co.*, *supra*, 42 Cal.2d 158, 161; *Hidden* v. *Malinoff*, *supra*, 174 Cal.App.2d 845, 851-852.) The distinctive criterion of assumption of risk, moreover, is full information on the part of the plaintiff. As stated in *Rogers* v. *Los Angeles Transit Lines*, *supra*, 45 Cal.2d 414: '' 'The plaintiff does not assume the risk of any negligence which he has no reason to anticipate, but once he is fully informed of it, it is well settled that the risks arising from such negligence may be assumed.' '' (P. 419; and see *Prescott* v. *Ralphs Grocery Co.*, *supra*, p. 162.)

It is apparent that the defendants confuse the defense of assumption of risk with that of contributory negli-

gence. Where it merely appears that the plaintiff should or could have discovered the danger by the exercise of ordinary care, the defense is contributory negligence and not assumption of risk. (*Prescott* v. *Ralphs Grocery Co., supra,* pp. 161-162.) The essence of defendants' argument is that if the plaintiff had exercised due care she would have known of the danger of the 9-inch stepdown and that therefore she assumed the risk of such hazard. Mrs. Hook may have been aware of the hazards of walking in the manner in which she did, and thus she may have been negligent in exposing herself to these hazards; but there is no evidence that she knew or must have known of the danger of the stepdown. The defense of assumption of risk presupposes the existence of danger and a risk attendant thereto. Therefore, assuming *arguendo* that the stepdown constituted a dangerous condition, the defendants, as invitors, had the duty to remove such condition or to warn the plaintiff of its existence. Had the defendants performed their duty (plaintiff had a right to assume they would), plaintiff's conduct in walking in the manner which she or the witnesses described was not necessarily a dangerous one. As stated by Mr. Justice Bray in *Johnston* v. *Orlando,* 131 Cal.App.2d 705 [281 P.2d 357] : ''It would be a curious rule of law which would hold that a person relying on the use of due care by persons owing that duty to him, in the absence of anything indicating they would not use it, was assuming the risk of their nonperformance and therefore could not recover for their negligence.'' (Pp. 710-711.)

It was, therefore, error to grant the instruction on assumption of risk. The next inquiry, then, is whether the error was prejudicial. If it cannot be said that, in the absence of the error complained of, a different verdict would have been improbable, the error is prejudicial. (*People* v. *Newson,* 37 Cal.2d 34, 45 [230 P.2d 618] ; *People* v. *Hamilton,* 33 Cal.2d 45, 51 [198 P.2d 873].) It is suggested by the defendants that in any event the plaintiff was guilty of contributory negligence as a matter of law and that accordingly a different verdict could not result even if the instruction on assumption of risk were not given. Only in rare cases can it be said as a matter of law that the plaintiff's negligence proximately contributed to the accident. (*Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826] ; *Varas* v. *Barco Mfg. Co.,* 205 Cal.App.2d 246, 263 [22 Cal.Rptr. 727].) Contributory negligence as a matter of law results only if reasonable men could draw but one inference, namely one that

points unerringly to the negligence of plaintiff contributing to the injury. (*Brubaker* v. *Pacific Turf Club*, 204 Cal. App.2d 156, 159 [22 Cal.Rptr. 173]; *Frazier* v. *Yor-Way Market, Inc.*, 185 Cal.App.2d 390, 398 [8 Cal.Rptr. 335].) In all other cases the question of contributory negligence is one of fact for the jury. In the present case the jury could draw different inferences from the evidence presented. In determining whether contributory negligence is established as a matter of law, it is elementary that where there are different inferences that may be drawn, one for and one against, the one against will be followed. (*Anthony* v. *Hobbie, supra,* p. 818.) Here the jury could infer that the door was open or that it was closed; that the room was lighted or that it was not lighted; and that the plaintiff was looking ahead as she walked or that she was walking looking back over her shoulder. It could, accordingly, draw proper inferences as to the combination in which any or all of these circumstances existed. Thus the jury could infer that the door was closed and that the plaintiff was looking straight ahead as she opened the door. Certainly these circumstances, when coupled with the stepdown immediately inside the door, would not warrant the conclusion of a finding of contributory negligence as a matter of law, regardless of whether the room was lighted or unlighted. In view of the different inferences which may be drawn, it cannot be said in the present case that the only reasonable hypothesis is that such contributory negligence exists.

Under the factual situation presented by the present case the jury might well find that there was no contributory negligence, yet find, under the questioned instructions, that the plaintiff, even though she was exercising due care, assumed the risks of injury. We cannot say, therefore, that in the absence of the instructions on assumption of risk, a different verdict would have been improbable. Accordingly, the giving of such instructions constitutes prejudicial error.

The judgment is reversed.

Bray, P. J., and Sullivan, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 17, 1963.