[Civ. No. 20063.   First Dist., Div. Two.   May 17, 1963.]

MARY G. ROMERO, Plaintiff and Appellant, v. MAREE AND'RA, Defendant and Respondent.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Plaintiff and Appellant.

Bruno & Gassett and Simon J. Katzen for Defendant and Respondent.

KAUFMAN, P. J.—Plaintiff, Mary G. Romero, had her hair bleached at Emma's Beauty Salon, owned and operated by the defendant, Maree And'ra. The complaint alleged that plaintiff's injuries were caused by the effects of chemicals negligently applied by the defendant's employee, Jean Fowler. Before trial, the complaint was amended to include a count for breach of warranty. On this appeal from the judgment in favor of the defendant entered on a jury verdict, the contentions on appeal are that the court erred in refusing the proffered instruction on res ipsa loquitur and in its instructions on the assumption of risk and contributory negligence.

The facts are as follows: In July 1959, the plaintiff discussed with the defendant the feasibility of having her hair bleached blond. At this time, the plaintiff was about 40 years old and had her dark hair dyed and tinted an auburn shade but had never had her hair bleached. The defendant and her employee, Jean Fowler, examined the plaintiff's hair and indicated that it could be successfully bleached blond by a process which was to be done in several stages on July 9, 10, 11 and 18, 1959. Plaintiff was anxious to have the job done since she wanted to be a blond within a three-week period in order to attend a function with her daughter.

The bleaching process was begun on July 9 and 10, with Miss Fowler doing all of the work. The defendant, who lived next door to her shop, however, was in and out of the shop constantly and supervised the operation. On each day, two applications of bleach were initially applied to the plaintiff's hair about one inch from the scalp to the ends. Then, in the latter part of the day, the bleach was applied to the area near the roots and left for only one hour. Subsequently, the plaintiff's hair was rinsed and a tinting substance or "toner" applied. Both the bleaching and the tinting substance con-

tained peroxide. On July 11, when the plaintiff returned for her third bleaching treatment, Miss Fowler again did most of the work. However, while Miss Fowler left for 15 minutes to eat lunch, another employee, Diane Sousa, applied the bleach to the roots. Plaintiff testified that Diane's application of bleach was performed in a rough manner, but that she did not comment on it. When Miss Fowler returned from lunch and checked Diane's work, she found that the bleach had dried out on the ends. More bleach was applied to the area and then it was determined that the additional bleach was unnecessary and plaintiff's hair was rinsed with water.

Plaintiff testified that she felt a tingling and uncomfortable feeling on her scalp after the first treatment on July 9. When she commented on this to Miss Fowler, the latter said it was only natural. At the time of the second treatment on July 10, she continued to feel the tingling together with a mild soreness of the scalp as well as a certain numbness but made no comment about it. On July 11, immediately after Miss Fowler rinsed out the bleach with water, her scalp felt numb and she experienced a burning sensation but registered no actual complaint. Later that afternoon, when the toner was applied, her head felt extremely sore and the burning sensation increased. She complained to Miss Fowler who gave her a magazine to fan her head. At home on the evening of July 11, her scalp was sore and numb. Sometime between July 11 and 18, plaintiff returned to the defendant's shop for a shampoo and set. At this time, she discussed the breakage of her hair which she had noticed after the first treatment with Miss Fowler. During this period (July 11-18), plaintiff discussed her hair problems with a relative who had also had her hair bleached.

When the plaintiff returned to the defendant's shop on July 18, her scalp was still sore and numb. Despite the soreness, plaintiff returned for the final treatment without any apprehension. After the final treatment on July 18, plaintiff went to Adeen's Beauty Shop, which was then located directly in front of Emma's and underwent 5-6 hot oil treatments. These treatments consisted of oil applied to the plaintiff's hair and then an electrical heat cap for 20 or 30 minutes. Plaintiff testified that on July 11 and 18, she asked Miss Fowler to give her hot oil treatments but Miss Fowler declined because in her opinion, plaintiff's scalp was too sore and sensitive after the bleaching processes. After the oil treatments at Adeen's, plaintiff's scalp felt smoother but her hair was still breaking

at the scalp. When plaintiff shampooed her hair at home after the third hot oil treatment at Adeen's, a great amount of hair came out on her towel.

The owner and operator of Adeen's, Mrs. Adeen Dooley, who had worked on the plaintiff on prior occasions, testified as an expert witness on behalf of the plaintiff. Mrs. Dooley stated that in her opinion, plaintiff's hair breakage was caused by overbleaching, i.e., the bleach put on too many times and left too long. She further testified that the plaintiff never entered her shop while her hair was being bleached at Emma's.

Miss Fowler testified that sometime after all of the bleaching treatments had been completed, the plaintiff complained about the breakage of her hair. Miss Fowler advised her to seek advice at the local beauty school. She further testified that she saw the plaintiff enter Adeen's shop on each day during the bleaching process and that the plaintiff did not have a shampoo and set at Emma's between July 11 and 18.

On August 6, the plaintiff consulted Dr. Columbus, a dermatologist, who found that her scalp was red, sore and scaly and her hair was straw-like and some of it had broken off. Dr. Columbus found no falling out of the hair but rather a breakage close to the scalp. As plaintiff had not mentioned the earlier hair dyes, etc., Dr. Columbus was reasonably certain that the bleaching was the cause of the problem. On September 15, 1959, the plaintiff complained to Dr. Columbus of severe daily headaches and blurring of vision. She was referred to an opthalmologist for an eye examination and nothing was found to account for her complaints. Dr. Columbus stated that he could not account for the headaches on the basis of the scalp findings and that in his opinion, the plaintiff's symptoms were magnified out of proportion to the actual physical findings. When Dr. Columbus last saw the plaintiff in February 1960, her scalp was normal and her hair had regrown but she still complained of scalp tenderness and severe headaches.

On September 18, 1959, plaintiff's family physician, Dr. Premo, referred her to a neurologist, Dr. Skillicorn. Plaintiff told Dr. Skillicorn that she had had her hair bleached in mid-July and approximately three weeks later, her hair started to fall out and her scalp felt numb. In Dr. Skillicorn's opinion, the plaintiff did not have a true headache but rather a scalp pain.

The first contention on appeal is that the trial court erred in refusing plaintiff's proffered instruction on the doctrine of

res ipsa loquitur. Plaintiff contends that the only cause of her injuries was the effect of the bleaching chemical negligently applied by the defendant's employee, so that an inference of negligence arises as a matter of law. ▮ Res ipsa loquitur applies where the occurrence of the injury is of such a nature that it can be said in the light of past experience that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied both on common knowledge and expert testimony (*Siverson* v. *Weber*, 57 Cal.2d 834, 836 [22 Cal.Rptr. 337, 372 P.2d 97]).

In the instant case, the uncontroverted evidence established that it was customary in the trade to give a patron a patch test 24 hours before the application of a dye or tint. Miss Fowler testified that she did not give the plaintiff a patch test as the plaintiff had had her hair dyed before and had not reported any history of an allergic reaction, etc. The directions for the bleaching product used, Miss Clairol, specify the patch test.

We note that the courts of this state have applied the doctrine of res ipsa loquitur in a similar case involving a permanent wave (*Chauvin* v. *Krupin*, 4 Cal.App.2d 322 [40 P.2d 904]) and a cold wave (*Brown* v. *Higbee*, 175 Cal.App.2d Supp. 917 [1 Cal.Rptr. 316]). ▮ Thus, we see no merit to the respondent's argument that the doctrine should not be applied to dyes as well as mechanical treatments. ▮ The patron coming to the beauty salon relies upon the skill and knowledge of the operator who is issuing the treatments to her (*Bush* v. *Bookter* (La.App.) 47 So.2d 77, 79). When a patron of a beauty salon requests a well-known treatment and submits to that process, a part of which involves a chemical, she has a right to expect that precautionary instructions of the manufacturer relating to the application of the solution to her hair will be complied with (*Weiss* v. *Axler* (1958) 137 Colo. 544, [328 P.2d 88]). We note that in the instant case, the lack of the patch test was in no way due to the fault or negligence of the plaintiff, as in *Arata* v. *Tonegato*, 152 Cal. App.2d 837 [314 P.2d 130], apparently involving the same product.

In the instant case, the administration of the bleaching treatment was under the control and management of the defendant; the plaintiff was merely the passive recipient of the treatment. Shortly thereafter, she sustained certain injuries

which, in the ordinary course of things, would not have happened in the absence of due care. Respondent here argues that the plaintiff has not shown that it was the defendant's lack of due care rather than Adeen's which caused the injury. Admittedly, in the authorities cited above, there was no other possible intervening cause as in the present case. ■ However, where the evidence is conflicting or subject to different inferences as to a fact necessary to the applicability of the doctrine of res ipsa loquitur, for example, as to whether an injury was caused by the conduct of the defendant rather than by the acts of someone else, the question of fact must be left to the jury under proper instructions (*Davis* v. *Memorial Hospital*, 58 Cal.2d 815 [26 Cal.Rptr. 633, 376 P.2d 561]).

■ Here, the defendant was responsible for the bleaching process and, as could be found from Mrs. Dooley's testimony, the bleaching process was the cause of the plaintiff's injury. Although there was no expert testimony as to the probability of negligence in such a situation, the uncontroverted evidence indicated the custom and manufacturer's indication of a patch test, and the absence of such a test in this case. ■ Furthermore, it is a matter of common knowledge among laymen that the dyeing and bleaching of hair is not ordinarily harmful unless negligently done. Here, the defendant and Jean Fowler testified that they had bleached hundreds of heads of hair without ill aftereffects.

■ The applicability of res ipsa loquitur thus depended on a determination of the factual issue whether the bleaching process of the defendant or the hot oil treatments administered at Adeen's were the cause of the plaintiff's injuries. It was for the jury to make the determination from the conflicting testimony as to whether plaintiff's injuries and loss of hair commenced after the fourth bleaching or only after the oil treatments. Since there was sufficient evidence to permit a finding for the plaintiff on the issue, she was entitled to a conditional instruction making res ipsa applicable in the event of such a finding (*Davis* v. *Memorial Hospital, supra*).

The court gave no instruction on res ipsa loquitur and refused to give the following instruction requested by the plaintiff on the subject: "If you find from the evidence that the Plaintiff sustained injury as the proximate result of the application of the bleaching solution in question, an inference arises that the proximate cause of the occurrence was some negligent conduct on the part of the Defendant. That inference itself

is a form of evidence and if none other exists tending to overthrow it, or if the inference, either alone or with any other evidence supporting it, preponderates over contrary evidence, it warrants a verdict for the Plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon said Defendants to rebut the inference by showing that they did, in fact, exercise reasonable care and diligence or that the accident occurred without being proximately caused by any failure of duty on the part of the Defendant.''

Obviously the requested instructions would have made res ipsa loquitur applicable solely on a conditional basis; certain findings of fact would have been necessary before the inference afforded by the doctrine could arise, including a finding that the injury to plaintiff was caused by an agency or instrumentality in the exclusive control of the defendant. These words, although general in character, would have directed the jury to determine whether the bleaching was the cause of the injury since this was the only possible cause mentioned which was attributable to defendant. More specific language in regard to that factual issue would have been desirable, but it is unlikely that the jury would have been misled by the requested instructions, and the trial court did not refuse them because of a lack of specificity but because of its mistaken belief that res ipsa loquitur could not apply under any view of the evidence. It was error to refuse to give the requested instructions and, in the light of the entire record, the error was prejudicial.

In order to aid the parties and court on retrial, we turn briefly to the second contention on appeal, namely, that the trial court erred in instructing the jury on the assumption of risk and contributory negligence. Viewing the evidence in the light most favorable to the party offering the instructions (*Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 636 [255 P.2d 795]; *Edgett* v. *Fairchild,* 153 Cal.App.2d 734, 738 [314 P.2d 973]), we think the instructions were properly given. While assumption of risk and contributory negligence may arise under the same set of facts, they differ in essentials. The doctrine of assumption of risk is based on two elements: the actual knowledge and appreciation of a danger, and voluntary acceptance of the risk (*Rostant* v. *Borden,* 192 Cal.App.2d 594 [13 Cal.Rptr. 553]; *Gomes* v. *Byrne,* 51 Cal.2d 418, 420 [333 P.2d 754]). Here, the jury could conclude that when the plaintiff went to Adeen's for hot

oil treatments after Miss Fowler had refused to administer such treatments because of the condition of the plaintiff's scalp, the plaintiff had placed herself in a place of known danger with knowledge and appreciation of the risk (*Hook* v. *Point Montara Fire etc. Dist.*, 213 Cal.App.2d 96, 101 [28 Cal.Rptr. 560]). We note that the jury was properly instructed that the plaintiff did not assume the risk of the negligence on the part of the defendant or her employees (see 14 A.L.R.2d 881 et seq.). Contributory negligence which arises from a lack of due care could be inferred from the fact that the plaintiff returned to Emma's for the third and fourth bleaching treatments even though her scalp felt sore and numb.

Judgment reversed.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied June 3, 1963, and respondent's petition for a hearing by the Supreme Court was denied July 10, 1963.