[Civ. No. 27524.  Second Dist., Div. One.  June 12, 1964.]

LEIDA RODRIQUEZ, Plaintiff and Appellant, v. LOMPOC TRUCK COMPANY et al., Defendants and Respondents.

ROBERT E. FABRIS, an Incompetent Person, etc., Plaintiff and Appellant, v. LOMPOC TRUCK COMPANY et al., Defendants and Respondents.

MARK R. FABRIS, a Minor, etc., et al., Plaintiffs and Appellants, v. LOMPOC TRUCK COMPANY et al., Defendants and Respondents.

(Consolidated Cases.)

770

Belli, Ashe & Gerry and Melvin M. Belli for Plaintiffs and Appellants.

Morgan, Holzhauer, Burrows, Wenzel & Lynberg and William Marshall Morgan for Defendants and Respondents.

LILLIE, J.—Plaintiffs, two injured and the heirs of one killed in a collision with defendants' truck, appeal from judgment entered on a jury verdict in favor of defendants. The issues relate primarily to certain instructions.

We construe the evidence and all reasonable inferences therefrom most strongly in favor of respondents. (*Grainger* v. *Antoyan,* 48 Cal.2d 805 [313 P.2d 848]; *Juchert* v. *California Water Service Co.,* 16 Cal.2d 500 [106 P.2d 886].) Plaintiffs were passengers in a 1951 Cadillac driven by Earl Sievers, not a party herein. None of the plaintiffs testified concerning the collision; they rely entirely upon the testimony of Sievers who was their only eyewitness. Having been on a trip together, plaintiffs and Sievers, on October 10, 1960, were returning north on Highway 101 to their homes in San Francisco when they had a blowout of the right-rear tire. They had a flat tire the night before in Los Angeles, but failed to have it repaired; Sievers had no spare. He pulled off

to the side of the road, examined the tire and removed the fender skirt. As to what Sievers then said to plaintiffs concerning the flat tire and what they all said and did, is found in Sievers' trial testimony and testimony given by him on two prior occasions—three weeks and three months, respectively, after the accident. Other than admitting he "said something" to plaintiffs, Sievers at the trial denied he discussed with them whether they should continue with the flat tire; however, on cross-examination he admitted that previously he had twice testified otherwise—that he discussed the flat tire with plaintiffs and they all decided to drive to a service station 9 miles ahead. Sievers admitted that on October 31, 1960, three weeks after the accident, he testified: "My - - - we, I got back, after I looked at the tire and took my fender skirt off and put it in my trunk, I got back to the back of the car and I told my cousin Robert Fabris that I had saw a sign around six miles, and I was wondering if I should just try and drive slowly up to it, and *we all decided that we should.*" (Italics added.) Further, at the trial, asked about his conduct with plaintiffs, Sievers testified "that nobody said nothing"; he denied he talked to Fabris; finally he said: "I don't remember"; and then admitted— "I said we had a blowout." At this point Sievers again admitted that in December 1960, in answer to the question: "Then what did you do after you had removed the fender skirt and put it in the car?"; he testified: "I had sat in the car a few seconds, sir, and *I asked them* (plaintiffs) '*What shall we do?*' Then I remember seeing a sign in back of us saying there was a Chevron station around 9 miles ahead, and I happened to look up and I saw another Chevron sign ahead of us that said there was a Chevron station 9 miles ahead. *So we decided just to go along slow so we could get to the gas station* to get another tire—get my other tire fixed." (Italics added.) Sievers then started the Cadillac and proceeded ahead with the flat tire. Going north, Highway 101 at that point is a one-way, two-lane highway; he turned the car out of the slow right lane and drove the disabled Cadillac north in the *left* or *fast* lane of traffic.

Around 1:15 p.m. defendant Nunnelee was driving a truck with two trailer attachments in the *right* or *slow* lane, also going north. As he rounded a curve he first saw, some 300 to 500 feet ahead, the Cadillac traveling in the *left* or *fast* lane going what he thought to be about the same speed as his truck. The truck was going from 48 to 50 miles an hour; it

was in ninth gear and controlled by a governor which prohibited speed over 50. The Cadillac then reduced its speed and the truck began to overtake the Cadillac, both vehicles remaining in their respective lanes; there was no car between them. He did not notice anything unusual about the manner in which the Cadillac was being driven, or whether it had a flat tire or if its right side was down. At all times he was looking at the road ahead but the next time he particularly noticed the Cadillac he was within 3, 4 or 5 car lengths of it; the Cadillac was going 20 or 25 miles per hour. At this time and for "a matter of a second, maybe two," he looked in the rear-view mirror attached to the driver's side of the truck to determine if it was safe to pass the Cadillac; he did this as a precaution to make sure that no car behind him would attempt to go around the truck through the gap between it (in the right lane) and the Cadillac (in the left). When he glanced back to the road "the Cadillac was just coming across the white line" from the left lane into the right lane directly in front of the truck; he was "right on it" and at that instant he "yanked at the wheel and hit at the brake" but before it could take effect the collision had occurred. The left front tire of the truck collided with the right-rear bumper of the Cadillac, and jumped up over it and into the trunk of the Cadillac. Damage to the Cadillac extended from the right rear and the right-rear side forward to the right-front door; the front-right side, the front and left-front side appear to have been undamaged by the impact. (Exs. 12, 14.)

One Wilkinson, northbound behind the truck, witnessed the accident; he saw the Cadillac traveling in the *left fast* lane, then suddenly cut over into the right lane directly in front of the truck.

Jones, a tire expert, examined the flat tire in the Cadillac trunk (the first flat Sievers had in Los Angeles) and determined it could have been repaired with only minor effort. He also examined the flat tire on the Cadillac at the time of the accident and testified that it contained a double tube; that the blowout was caused by the outer tube rubbing against the road through a small portion of the tire which had worn out exposing a thin layer of ply fibers and the outer tube; that the outer and inner tubes revealed that the Cadillac was driven on the flat tire 10 to 25 miles—based on the fact that the tube, made of natural rubber, a strong material, required at least 10 miles of flat riding before it could become as shredded as it was; that the tire and rim were not as dam-

aged in proportion to the outer tube because the double tube formed a large mass of rubber providing a cushioning effect inside the tire preventing the tire from being compressed entirely flat when driven; and that any sudden acceleration or deceleration of speed would cause the car to swing in the direction of the flat tire—in this case, to the right because the right-rear tire was flat.

Harper, a physicist, examined the tire marks on the highway and correlated them with various parts of the Cadillac and truck; he found the physical evidence (damage to the vehicles and debris at the scene) to be consistent with the testimony advanced by both sides.

Around 1 p.m., Ernest Costa, a laborer in a beanfield near the highway, heard an unusual thumping sound, like that of a car going by with a flat tire at "a pretty fast rate of speed," coming from the northbound lane of the highway; he then proceeded to the scene of the accident where he saw the Cadillac with the flat tire.

The main evidence pointing to how the collision occurred—the lane in which plaintiffs traveled, how fast Sievers drove, how far they rode on the flat tire and whether the Cadillac swerved in front of defendants' truck—is in irreconcilable conflict. The only undisputed fact concerning the accident is that defendant Nunnelee was at all times traveling in the slow right lane where the collision occurred. Among the four occupants of the Cadillac only Sievers testified; there were no other eyewitnesses who testified except defendant Nunnelee and Wilkinson. Plaintiffs' version of the accident is based on Sievers' testimony that he drove the Cadillac in the slow right lane, partly on the shoulder, in slow gear at a speed of 5 to 8 miles per per hour for approximately 7/10ths of a mile; that he first saw defendants' truck in his rear-view mirror when the truck was 400 or 500 yards behind him, just rounding a curve; that a little later he saw the truck several car lengths behind and motioned defendant Nunnelee to pass; and that when he glanced in his mirror a third time he saw defendants' truck, which had not slackened its speed, upon him and the impact occurred from the rear without warning. While Sievers, a Mr. Kutbach and a highway patrolman testified that Nunnelee, after the accident, said he had not seen the Cadillac, Nunnelee denied making such a statement.

After hearing the two versions the jury, as it had a right to do, rejected Sievers' story and accepted as true the testi-

mony of defendant Nunnelee and his witnesses. We will not disturb the factual determination of the jury, for it is not the province of this court to evaluate conflicting evidence. (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557]; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689].)

There is no merit to appellants' first contention that neither the pleadings nor the evidence supports the instructions on contributory negligence. The issue of imputed negligence having been abandoned (the jury was properly instructed that the negligence, if any, of the driver of the Cadillac cannot be imputed to the passengers), and contributory negligence having been specifically and properly made a separate defense in the pretrial order (*People* ex rel. *Dept. Public Works* v. *Valley Drive-In Theater Corp.,* 206 Cal.App.2d 309, 314 [23 Cal.Rptr. 626]), defendants were entitled to an instruction thereon if the record shows "slight or, at least, some evidence upon the issue." ▮ (*Miller* v. *Western Pac. R. R. Co.,* 207 Cal.App.2d 581, 590 [24 Cal.Rptr. 785].) " ... [I]n order to find that the giving of any certain instruction was not warranted by the evidence, the court must find that, as a matter of law, there is in the record not even slight or inconclusive evidence on the point covered by the instruction." (*Washington* v. *City & County of San Francisco,* 123 Cal.App.2d 235, 238 [266 P.2d 828]; see also *MacLean* v. *City & County of San Francisco,* 151 Cal.App.2d 133 [311 P.2d 158].)

▮ Viewing the evidence in a light most favorable to defendants, who offered the instructions (*Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 633 [255 P.2d 795]), we find in the record sufficient substantial evidence to support defendants' theory of contributory negligence. (*Hook* v. *Point Montara Fire etc. Dist.,* 213 Cal.App.2d 96, 99 [28 Cal.Rptr. 560].) Appellants' argument in this connection is purely partisan, predicated on Sievers' testimony; but the evidence, considered in the light of the above rules, points not only to the negligence of Sievers but to the negligence of plaintiffs themselves. This conclusion is based, not upon imputation of Sievers' negligence (there is no evidence to support a finding thereon), but upon their own conduct in riding with Sievers in the Cadillac from the time they had the flat tire up to the moment of collision. ▮ "Even when negligence of a driver may not be imputed to him, the passenger is bound to exercise ordinary care for his own safety. He may not shut his eyes to the obvious danger; he may not blindly rely on the

driver in approaching a place of danger. He is normally bound to protest against actual negligence or recklessness of the driver, the extent of his duty in this regard depending upon the particular circumstances of each case and ordinarily being a question of fact for the jury. [Citations.]'' (*Pobor* v. *Western Pac. R. R. Co.*, 55 Cal.2d 314, 324 [11 Cal.Rptr. 106, 359 P.2d 474].) ▉ Knowing the right-rear tire to be flat, plaintiffs decided with Sievers to continue in the disabled car to the nearest service station some 9 miles ahead. However, instead of driving slowly in the right or slow lane partly on the shoulder, Sievers turned his car, difficult to control because of the flat tire and, in safety, capable of only slow speeds, out into the left or fast lane of traffic on a two-lane highway where he drove at a "pretty fast rate of speed" (estimated at first to be around 50, then 20 or 25 miles per hour) for at least 10 miles, until he suddenly and without warning swerved to the right across the center white line into the slow right lane in which defendant Nunnelee was traveling, directly in front of his truck. This evidence warrants the inference that plaintiffs were negligent in agreeing to proceed for at least 9 miles in a disabled car and in assenting, for an appreciable time, to the negligent and reckless manner in which Sievers drove the vehicle, without doing whatever a person of ordinary prudence in the same situation would do to inform or warn the driver in an effort to prevent an accident. (*Miller* v. *Western Pac. R. R. Co.*, 207 Cal. App.2d 581, 591 [24 Cal.Rptr. 785].) ▉ Whether they exercised ordinary care under the circumstances is a question of fact for the jury. (*Howard* v. *Alta Chevrolet Co.*, 111 Cal.App.2d 38, 44 [243 P.2d 804].) ▉ The duty to protest arose, not simultaneously with the impact, as urged by appellants, but when Sievers turned his disabled car into the fast left lane and drove therein at a speed excessive under the circumstances; at the very least there is a question of fact as to their duty to protest. (*Pobor* v. *Western Pac. R.R. Co.*, 55 Cal.2d 314, 324 [11 Cal.Rptr. 106, 359 P.2d 474] ; *Miller* v. *Western Pac. R. R. Co.*, 207 Cal.App.2d 581, 591 [24 Cal.Rptr. 785].) On the issue of proximate cause, two witnesses saw the Cadillac without any warning suddenly swerve across the white line from the left to the right lane directly in front of the truck; and an expert (Jones) testified that the cause of such a swerve would be a sudden acceleration or deceleration of the car, the flat tire being on the right side.

■ Appellants' next contention is that it was pre-judicial error to instruct the jury on the defense of assumption of the risk. There is merit to their claim and, for the reasons hereinafter set forth, we hold the doctrine to be inapplicable to the facts in this case and the giving of instructions on assumption of the risk to be error.

■ "The doctrine of assumption of risk is based on the theory that there has been a voluntary acceptance of a risk, and such acceptance, whether express or implied, requires knowledge and appreciation of the risk." (*Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 384 [240 P.2d 580]; *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904]; see Rest., Torts, § 893, p. 491; Prosser on Torts (2d ed. 1955) § 55, pp. 303-314:) ■ This theory is different from that upon which contributory negligence is predicated. " 'The defenses of assumption of risk and contributory negligence are based on different theories. Contributory negligence arises from a lack of due care. The defense of assumption of risk, on the other hand, will negative liability regardless of the fact that plaintiff may have acted with due care. ... It is available when there has been a voluntary acceptance of a risk and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk. ... Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of the risk, but where it merely appears that he should or could have discovered the danger by the exercise of ordinary care, the defense is contributory negligence and not assumption of the risk.' (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904].)" (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 235 [282 P.2d 69]; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 384 [240 P.2d 580].)

■ "It is now well established in California that the doctrine of assumption of risk has two requisite elements: (1) Knowledge and appreciation of the *danger* involved by the person in question; and (2) his voluntary acceptance of the risk. (*Gomes* v. *Byrne*, 51 Cal.2d 418, 420 [333 P.2d 754]; *Prescott* v. *Ralphs Grocery Co., supra,* at p. 162.) ■ It is also firmly established that such knowledge must be *actual* knowledge. (*Hayes* v. *Richfield Oil Co., supra,* 38 Cal.2d 375, 385; *Prescott* v. *Ralphs Grocery Co., supra,* at p. 162; *Gomes* v. *Bryne, supra,* at p. 421; *Guerrero* v. *Westgate Lumber Co.,* 164 Cal.App.2d 612, 618 [331 P.2d 107]; *Martin*

v. *Stone, supra,* at p. 731 [187 Cal.App.2d 726 (10 Cal.Rptr. 184)]; *Rostant* v. *Borden,* 192 Cal.App.2d 594, 598 [13 Cal. Rptr. 553].) Such knowledge, however, may be inferred from the proved facts and circumstances. (*Gomes* v. *Byrne, supra,* at p. 421; *Rostant* v. *Borden, supra,* at p. 598.)" (*Hook* v. *Montara Fire etc. Dist.,* 213 Cal.App.2d 96, 100 [28 Cal.Rptr. 560].) (See also *Eramdjian* v. *Interstate Bakery Corp.,* 153 Cal.App.2d 590 [315 P.2d 19].)

Under the evidence in this case the defense of assumption of the risk can arise, if at all, only from defendant Nunnelee's version of the accident; and while it reveals that plaintiffs must have known and appreciated their position in riding in an unsafe car disabled by a flat tire, out in the fast lane of traffic in a two-lane highway going, at what under the circumstances was, an excessive speed, it shows neither the hazard, danger or risk to which plaintiffs were subjecting themselves, and for which defendants were responsible, nor that plaintiffs had knowledge or appreciation of any such danger. As to what plaintiffs were assuming, was it the risk incident to Sievers' negligent conduct? If so, this might be a defense to an action against Sievers, but Sievers is not a defendant herein. Was it then a risk incident to defendant Nunnelee's negligent conduct? But again, Sievers' testimony, which would warrant a finding of defendants' negligence, shows no facts material to the defense of assumption of the risk; on the other hand, defendant Nunnelee's testimony shows no negligence on his part.

The defense is predicated on "the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk." (Prosser on Torts (2d ed. 1955) p. 303), the theory being that defendant's conduct involves certain danger of risk which plaintiff voluntarily accepts. (*Morton* v. *California Sports Car Club,* 163 Cal.App.2d 685 [329 P.2d 967]; *Hawk* v. *City of Newport Beach,* 46 Cal.2d 213 [293 P.2d 48].) Thus, "[A]ctual knowledge of the existence of a specific danger is an essential and indispensible element of the defense of assumption of risk." (*Guerrero* v. *Westgate Lumber Co.,* 164 Cal.App.2d 612, 618 [331 P.2d 107]; *Hook* v. *Point Montara Fire etc. Dist.,* 213 Cal.App.2d 96, 101 [28 Cal.Rptr. 560].) See also *Bee* v. *Tungstar Corp.,* 65 Cal. App.2d 729 [151 P.2d 537]; *Hidden* v. *Malinoff,* 174 Cal. App.2d 845 [345 P.2d 499]; *Griffin* v. *Irelan,* 194 Cal.App.2d 844 [15 Cal.Rptr. 306]; *Garber* v. *Prudential Ins. Co.,* 203

Cal.App.2d 693 [22 Cal.Rptr. 123]; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580]; *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904]; *Rogers* v. *Los Angeles Transit Lines*, 45 Cal.2d 414 [289 P.2d 226].) Accepting plaintiffs' version of the accident, even though plaintiffs acted with due care in riding with Sievers, partly on the shoulder in the right lane of traffic going between 5 and 8 miles an hour, they could neither have known nor appreciated that defendant Nunnelee, approaching from the rear, was not watching the road ahead and would negligently run them down; thus there could be no consent to defendant Nunnelee's dangerous conduct or the risk incident thereto. Accepting defendant Nunnelee's version, while plaintiffs knowingly rode with Sievers in a disabled car at between 20 and 25 miles per hour in the fast left lane and acquiesced in Sievers' conduct, defendant Nunnelee, driving in the slow right lane, was not negligent—it was Sievers who, without warning, swerved directly in front of defendant Nunnelee causing the accident; thus, what was the conduct and the risk or hazard arising therefrom for which defendant was responsible, which plaintiffs could know, appreciate and accept, and to which they subjected themselves by riding in Sievers' car? (See *Eramdjian* v. *Interstate Bakery Co.*, 153 Cal.App.2d 590, 603 [315 P.2d 19].) ██ " '[B]efore it can be said that one has "assumed the risk" of a *specified* hazard, it must be shown that he had knowledge of the condition creating the hazard.' " (Italics added.) (*Hayes* v. *Richfield Oil Co.*, 38 Cal.2d 375, 385 [240 P.2d 580]; *DeGraf* v. *Anglo California Nat. Bank*, 14 Cal.2d 87, 100 [92 P.2d 899].) "It is not enough that the plaintiff should have been aware of that danger. There must be evidence sufficient to show that he was actually aware of it." (*Guerrero* v. *Westgate Lumber Co.*, 164 Cal.App.2d 612, 618 [331 P.2d 107].) ██ Such actual awareness is not present in this record. Thus, because plaintiffs were not actually aware of the danger, the essential element of consent is also absent. It follows then, that if plaintiffs had no knowledge of the danger they were in no position to appreciate the same or to voluntarily accept the risk inherent therein. (*Hook* v. *Point Montara Fire etc. Dist.*, 213 Cal.App.2d 96, 105 [28 Cal.Rptr. 560].)

The evidence not being sufficient to warrant instructions on assumption of the risk, it was error to instruct thereon. Whether it was prejudicial to the rights of plaintiffs must be determined in the light of the unusual factual situation pre-

sented by this case to the jury and instructions given on the defense of contributory negligence. In accord with settled rules controlling the applicability of the doctrine, plaintiffs could have assumed the risk only if they had actual knowledge of, and consented to, the defendants' specific negligent conduct; the risk assumed must be one created by negligent conduct on the part of defendants. But, under the facts of this case and from the instructions herein given, the jury could have reasonably inferred that if plaintiffs knew of some danger in riding in the Cadillac (even that created by Sievers' negligence) they would be barred from recovery regardless of the reasonableness of their conduct. (*Hidden* v. *Malinoff*, 174 Cal.App.2d 845, 851 [345 P.2d 499].) Inasmuch as defendants pleaded the two affirmative defenses—contributory negligence and assumption of the risk—on essentially the same conduct, the giving of instructions on assumption of the risk overemphasized the single defense of contributory negligence to the prejudice of plaintiffs. (*Taha* v. *Finegold*, 81 Cal.App.2d 536 [184 P.2d 533].) Moreover, they repeatedly referred to the conduct of plaintiffs and their driver Sievers to the extent that the jury may well have rendered its verdict, not on the lack of negligence on the part of defendant Nunnelee, but, in light of the two diametrically opposed factual versions of how the collision occurred, on the negligent conduct of Sievers and/or the plaintiffs, without first finding that defendants were negligent. We cannot say that in the absence of instructions on assumption of the risk a different result would have been improbable. Accordingly, the giving of such instructions constitutes prejudicial error. (*Hook* v. *Point Montara Fire etc. Dist.*, 213 Cal.App.2d 96, 107 [28 Cal.Rptr. 560].)

Our conclusions render it unnecessary to consider the other assignments of error set out in appellants' opening brief. For the foregoing reasons the judgment is reversed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied July 6, 1964, and respondents' petition for a hearing by the Supreme Court was denied August 5, 1964.