Filed 1/5/22  Grosman v. Kasloff CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ALAN GROSMAN et al., Appellants and Cross-Respondents, v. MASAKO T. KASLOFF, Respondent and Cross-Appellant. | B298484 (Los Angeles County Super. Ct. Nos. SC122883 & SC124531) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge, and Mark A. Young, Judge.  Affirmed in part and reversed in part.

Cox, Castle & Nicholson LLP, Alicia N. Vaz and Scott R. Laes, for Appellants and Cross-Respondents.

Thompson Coburn LLP, Steven A. Morphy; K&L Gates LLP and Helen B. Kim, for Respondent and Cross-Appellant.

————————————————

**INTRODUCTION**

Alan and Michelle Grosman[1] had an access easement through the property of Masako Kasloff.[2] In this consolidated case, the Grosmans sued Kasloff for injunctive relief to remove a planter and retaining wall she built on part of the easement, and for damages for ficus trees and other items of the Grosmans that Kasloff allegedly removed or damaged. Kasloff sued the Grosmans for injunctive relief to trim their ficus trees, which bordered Kasloff's property, to six feet, in compliance with the Malibu Municipal Code. The trial judge[3] bifurcated the case, heard the equitable issues in a bench trial, issued a statement of decision on those issues and scheduled a trial setting conference on the legal issues.

Kasloff moved for entry of judgment. A subsequent judge[4]—different from the one who presided over the trial of the equitable issues and wrote the statement of decision—granted the motion.

On appeal, the Grosmans argue: (1) the trial judge erred by denying their claim for injunctive relief regarding Kasloff's use of the easement, (2) the trial judge erred by finding the Grosmans failed to establish their ficus trees were planted before 1993 and consequently by granting Kasloff's claim for injunctive relief regarding the height of the Grosmans' ficus trees, and (3) the

---

[1]    We refer to Alan Grosman by his first name where necessary to avoid confusion with Michelle Grosman.

[2]    The property was owned by the Masako T. Kasloff Trust. Kasloff was a trustee of the trust and lived on the property.

[3]    Judge Mitchell L. Beckloff.

[4]    Judge Mark A. Young.

2

subsequent judge erred by finding the statement of decision on the equitable issues resolved the legal issues and consequently by granting judgment in favor of Kasloff.

Both the Grosmans, on appeal, and Kasloff, on cross-appeal, argue the trial judge erred by saying the Grosmans may sue Kasloff for injunctive relief in the future.

We affirm in part and reverse in part. We agree with the Grosmans that the trial court erred by finding the statement of decision resolved the remaining legal issue. But we disagree with the parties' other arguments.

## FACTUAL AND PROCEDURAL BACKGROUND

*A.     The Parties and Their Complaints*

The Grosmans and Kasloff were neighbors. To understand the dispute, two background facts are necessary. First, to access their property (the dominant estate), the Grosmans had a 20-foot-wide nonexclusive easement through Kasloff's property (the servient estate). Second, the Malibu Municipal Code does not allow hedges that form a barrier and serve the same purpose as a fence or wall to exceed six feet in height. (Malibu Mun. Code, ch. 17.40, pt. 17.40.030(A)(3).) But the height requirement may not apply if the hedges were planted before March 26, 1993.[5] (*Id.*, ch. 17.60, pt. 17.60.040(A).)

---

[5]     Kasloff, in her trial brief, argued that even though the Malibu Code excludes trees planted before March 26, 1993, from the height requirement, the code still requires that after 20 years, those trees must follow the height requirement. (Malibu Mun. Code, ch. 17.60, pt. 17.60.040(C)(4).) But even this exception to the exception has exceptions, which the appellate record does not address. Kasloff does not reraise this argument on appeal.

3

This appeal concerns two of the several lawsuits the neighbors have filed against each other.

In the first lawsuit, the Grosmans sued Kasloff for injunctive relief and damages. The injunctive relief was for a court order that Kasloff remove a planter and retaining wall she had built in the easement. The damages were for Kasloff's alleged removal and destruction of the Grosmans' ficus trees, a fence, irrigation equipment and baseboards, and her alleged welding of a fence post to the Grosmans' gate.

In the second lawsuit, Kasloff sued the Grosmans for injunctive relief/quiet title and damages. The injunctive relief was for a court order that the Grosmans trim their ficus trees, which formed a hedge bordering Kasloff's property, down to the general six-foot height requirement, and for the easement to be deemed abandoned by the Grosmans. The damages were for the alleged nuisance created by the Grosmans' ficus trees exceeding 10 feet in height.

The trial judge consolidated the cases and bifurcated the trial, saying that the "[e]quitable [i]ssues, and only those facts, will be tried to the court as phase one. . . . If, after the [c]ourt [t]rial, legal issues still remain, they will be tried by jury trial as phase two."[6] Both parties submitted briefs before the trial on equitable issues. The Grosmans' brief explained how the equitable issues included "trespass and injunctive relief to make Mrs. Kasloff remove the things she impermissibly built within the Grosmans' access easement," but the "legal action [was] for damages (trebled

---

[6] The court referred to "legal issues" but the only remaining legal issue was whether Kasloff was liable for damages for removing the Grosmans' ficus trees, as discussed.

4

and/or doubled) for willful and wrongful removal of their trees by Mrs. Kasloff."

B.  *Phase One – Trial of the Equitable Issues*

The trial judge heard a bench trial on three equitable issues: "(1) The Grosmans' claim related to Ms. Kasloff's construction of certain permanent structures (a wall and planter) on her property but within Grosmans' access easement; (2) Ms. Kasloff's fire lane injunction request related to vegetation encroaching onto her property . . . ; and (3) Ms. Kasloff's northern property line injunction request requiring the Grosmans to trim the height of their ficus hedge."[7]

1.  *Summary of relevant evidence*

The trial court heard testimony from witnesses and received photographs and documents in evidence.

On the first issue, the parties agreed the easement is a "20-foot non-exclusive access easement," and "the purpose of the easement is to provide ingress and egress to the dominant estate, the Grosman property." The evidence showed Kasloff had built a retaining wall and planter on the easement portion that the Grosmans were not using for ingress and egress. At trial and on appeal, the Grosmans acknowledged that Kasloff's wall and planter did not hinder access to their property. But the Grosmans were planning to develop their property "in such a way that

_____

[7]  The trial court found Kasloff was not entitled to relief on the second issue because Kasloff failed to allege it in her complaint. In any event, the court found she would not have been entitled to relief even if it had been raised because the evidence showed the Grosmans' vegetation did not constitute a nuisance. Kasloff does not reraise this issue on appeal.

ingress and egress from their property will require use of that part of the easement where Ms. Kasloff has constructed improvements." The Grosmans had submitted plans to the City of Malibu for permits, but the permits were not issued before the end of the trial.

On the third issue, the parties stipulated the Grosmans' ficus trees bordering Kasloff's property are 12 feet tall. Alan testified they ranged from eight to 16 feet tall. It was uncontroverted that the Grosmans' ficus trees did not comply with the general six-foot height limit. For the Grosmans' ficus trees to be excepted from the height limit, the trees would have to have been planted before March 26, 1993. The parties did not dispute that the Grosmans' ficus trees would also be excepted from the height limit if the trees replaced ficus trees planted before March 26, 1993, and removed by Kasloff in 2014.

According to the cover letter in the Grosmans' exhibit 94, the pictures in that exhibit included images of the Grosmans' ficus trees, which were over six feet tall, before Kasloff removed them in 2014. Some photos showed the Grosmans' toddler grandson on a swing.

Carl Mellinger, an arborist and Kasloff's expert, reviewed the Grosmans' photographs, which included the toddler and testified the ficus trees appeared to be only one to two years old.

Patrick Clemons, a surveyor, testified he was over six feet tall, and the ficus trees near the property line were much taller than him when he surveyed the property in 2013.

Jo Ruggles, a friend of the former owner of the Grosmans' property, testified tall trees had existed along the Grosmans' and Kasloff's property line during the times she visited between 1987

and 2004. She also identified pictures of the trees taken in the 1990s and 2000.[8]

Kasloff's exhibit 15 was an invoice that showed the Grosmans' gardener purchased 122 ficus trees of different sizes in October 2011. Carlos Cabrera, the Grosmans' gardener, testified he planted new ficus trees in front of the old ones to increase privacy.

### 2. *Statement of decision*

On September 1, 2016, the trial judge issued its statement of decision. The decision explained the trial court "bifurcated the equitable issues from the legal issues in the cases for purposes of trial. The court heard the equitable issues without a jury. The legal issues remained to be tried to a jury."

On the first issue, the court found "the Grosmans did not meet their burden of demonstrating that Ms. Kasloff has unreasonably interfered with the easement's purpose." The court applied *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697 (*Scruby*). The issue was "whether the Grosmans have met their burden of establishing that Ms. Kasloff's use of her property––the servient estate—unreasonably interferes with the easement's purpose." Because there was no evidence that Kasloff's structures interfered with the Grosmans' access to their land, the court denied the Grosmans' requested relief. The court said, "That the Grosmans may develop their property in the future is of no consequence today; the issue is speculative."

But the court did acknowledge that "in the future, facts could develop that might assist the Grosmans in meeting their

---

[8] The Grosmans did not include these pictures with the exhibits they lodged with our court.

7

burden of demonstrating unreasonable interference by Ms. Kasloff."

On the third issue, the court found "the Grosmans did not meet their burden of demonstrating that the ficus trees in issue existed prior to March 23, 1993." The court explained that because "[t]here is no dispute that the ficus trees running along the north-south boundary line do not comply with the current six feet [sic] height limit that is now in effect in the City of Malibu," the Grosmans had to demonstrate that "the trees existed prior to March 26, 1993, to successfully defend against Ms. Kasloff's request." According to the court, "[t]he evidence before the court does not support the Grosmans' claim that a 'thick, lush, full, tall and quite lovely' ficus hedge existed between the properties prior to the Grosmans' purchase of the property in 2011. In fact, the court finds that to the extent ficus trees existed at or near the border of the properties, the ficus trees were planted sometime after the Grosmans purchased their property." The court ordered the Grosmans to cut their ficus trees to six feet.

The court also noted, "If the trees were ripped out as claimed by the Grosmans, Mr. Mellinger opined that there would have been substantial disruption to the soil from removal of the root balls where the trees were allegedly removed. There were no holes in the soil where trees were allegedly removed. The court finds Mr. Mellinger's testimony on this issue persuasive."

The court set a date for the "trial setting conference for the remaining legal issues."[9]

---

[9]     After the City of Malibu issued the Grosmans permits to develop their property but before judgment was entered in this case, the Grosmans sued Kasloff, for among other things,

C.   *Kasloff's Motion for Entry of Judgment and the Grosmans'*
     *Motion for Reconsideration*

In March 2018, before the trial setting conference, Kasloff moved for entry of judgment. According to Kasloff, the "resolution of the equitable issues also resolved the legal issues." Kasloff argued the legal issue was damages caused by Kasloff's alleged removal of the Grosmans' ficus trees, but the court had already found that no trees had been removed. Kasloff relied on the trial judge's note in his statement of decision that according to Mellinger, the removal of ficus trees would have caused substantial disruption to the soil, but there were no holes.

In September 2018, the parties stipulated to continue the hearing on Kasloff's motion and the trial setting conference until the trial judge returned to his department after a temporary reassignment. The trial court set the hearing on the motion for May 29, 2019.

In November 2018, the case was reassigned to the subsequent judge.

On May 17, 2019, the Grosmans filed a one-paragraph opposition to Kasloff's motion.[10] They argued that the issues raised by Kasloff were "essentially duplicative of those raised in

---

injunctive relief to remove her structures from the easement. Kasloff filed a motion for summary judgment, seeking a dismissal based on the statement of decision in this case.

[10]    Code of Civil Procedure section 1005, subdivision (b), states an opposition to a motion should be filed nine court days before a hearing.

The Grosmans conceded their opposition, filed on May 17, 2019, was not timely. Their counsel said it was due to his and his office's calendaring error.

the now-denied motion to abate" filed in a previous case. They requested judicial notice of the trial judge's statement of decision, which the Grosmans argued "specifically left open the issues which Ms. Kasloff would have deemed to somehow be determined."

On May 29, 2019, Kasloff filed a reply, arguing that the Grosmans' opposition was untimely and that the motion to abate was irrelevant because it was based on their claims regarding Kasloff's interference with the easement, not the removal of trees.

The subsequent judge heard the motion on the same day. The Grosmans argued the statement of decision did not decide their damage claims in their complaint, which included Kasloff's alleged removal of the Grosmans' ficus trees, a shared fence and landscaping irrigation. The court was reluctant to hear the new arguments made by the Grosmans during oral argument. The court noted that the Grosmans did not even bring a complaint to the hearing. The court said it had read the complaint but did not recall "any other claims for damages that weren't address[ed] by [the trial judge]." The court said it was granting the motion in part because, in their opposition, the Grosmans referred to the motion to abate, which had no bearing on the damages issue, and because the Grosmans "made no record before the court."

In its minute order, the court found that the Grosmans' opposition was untimely and did not address the issues encompassed in Kasloff's motion for entry of judgment. The court wrote that the trial judge "determined that [Kasloff] did not remove the ficus trees from [the Grosmans'] property. Therefore, [the Grosmans'] damage claims . . . based on those allegations are barred. Therefore, [Kasloff's] motion to enter judgment in [her] favor as to the remaining legal claims . . . is GRANTED."

On May 31, 2019, the Grosmans filed a motion for reconsideration, explaining that the statement of decision did not

10

decide the legal issues and attaching their complaint. Kasloff opposed the motion.

In June 2019, after a hearing, the court denied the motion because there were no new facts, law, or circumstances to justify reconsideration. The court entered judgment, explaining "based upon the September 1, 2016 Statement of Decision with respect to the parties' equitable claims, the Grosmans' legal claims for damages against [Kasloff] are barred, and judgment should be entered in favor of [Kasloff] and against the Grosmans on those claims."

## DISCUSSION

A. *The Trial Court Did Not Err by Denying the Grosmans' Claim for Injunctive Relief Regarding Kasloff's Use of the Easement*

1. *Relevant law*

The rule under *Scruby* is "[t]he owner of the servient estate may make continued use of the area the easement covers so long as the use does not 'interfere unreasonably' with the easement's purpose." (37 Cal.App.4th at pp. 703-704.) In *Scruby*, the appellant, who had a "'nonexclusive easement, 52 feet in width, for road and utility purposes,'" sued the respondent, the owner of the servient estate, to enjoin the respondent from placing an obstruction in the designated easement area. (*Id.* at pp. 700-701.) The trial court and court of appeal, relying on extrinsic evidence, determined that the easement's purpose was to provide the appellant, the dominant estate owner, a right of ingress and egress to the appellant's property. (*Id.* at p. 705.) The court of appeal affirmed the judgment for the respondent because the appellant conceded the respondent's use of the easement area did not block access to its property. (*Id.* at pp. 706, 708.) The court explained,

11

"when the width of an easement is definitely fixed by the grant or reservation creating the same, its use may be interpreted as commensurate with the entire width thereof." (*Id.* at p. 704.) But "[i]t is equally well settled . . . that '[t]he specification of width and location of surface rights-of-way does not always determine the extent of the burden imposed on the servient land.'" (*Ibid.*)

*Scruby*'s rule rests on the two principles articulated by the Supreme Court in *Ballard v. Titus* (1910) 157 Cal. 673 (*Ballard*), and *City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576 (*City of Pasadena*). First, the owner of a dominant estate of an easement of an expressly specified width "may have the absolute right to use to the limits of the specified width." (*Ballard*, at pp. 681-682.) Second, "the general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement." (*City of Pasadena*, at p. 579.)

2. *Standard of review*

"[T]he application of law to undisputed facts ordinarily presents a legal question that is reviewed de novo." (*Boling v. Public Employment Relations Board* (2018) 5 Cal.5th 898, 912.)

"'[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465-466 (*Sonic*); see also

*Ajaxo, Inc. v. E\*Trade Financial Corporation* (2020) 48
Cal.App.5th 129, 163-164.)

"The appellate court cannot substitute its factual
determinations for those of the trial court; it must view all factual
matters most favorably to the prevailing party and in support of
the judgment.  [Citation.]  ""All conflicts, therefore, must be
resolved in favor of the respondent."""  (*Dreyer's Grand Ice Cream,
Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 (*Dreyer's
Grand Ice Cream*).)

3.    *The trial court did not err by applying Scruby's rule*

The Grosmans argue the trial judge erred by applying
*Scruby* to analyze Kasloff's easement use.

We review this issue de novo and disagree with the
Grosmans.

*Scruby*'s rule applies and, by extension, the principles from
*Ballard* and *City of Pasadena*.  As the trial court noted, the access
easement in this case resembles the access easement in *Scruby*.  It
is uncontroverted the easement is a "20-foot non-exclusive access
easement," and "the purpose of the easement is to provide ingress
and egress to the dominant estate, the Grosman property."

The Grosmans' primary argument is that because the
easement in *Scruby* was ambiguous, the court's holding was
limited to ambiguous easements.  Not so.  No portion of the *Scruby*
opinion outlining the rule governing easements is prefaced with
the notion that the rule only applies when the easement is
ambiguous.  (See *Scruby, supra*, 37 Cal.App.4th at pp. 702-703,
704; see also *Vieira Enterprises, Inc. v. McCoy* (2017) 8
Cal.App.5th 1057, 1087 [rejecting the argument that *Scruby*'s rule
only applies to ambiguous easements:  "[Appellant] contends that
*Scruby* is distinguishable because [appellant]'s recorded right of

13

way is not ambiguous.  We regard *Scruby* as illustrating the principle . . . 'an injunction . . . will be denied when the obstruction does not constitute a material interference with the right of the owner of the easement.'"].)

Also, the ambiguous nature of the easement in *Scruby* was about the easement's purpose.  (*Scruby*, *supra*, 37 Cal.App.4th at p. 705 ["Resort to surrounding circumstances leaves no doubt in our minds, as it left no doubt for the trial court, that the easement before us can be reasonably construed as granting Scruby the right of ingress and egress to the property."].)  After the court of appeal determined the easement's purpose was access to the dominant estate, the court applied the general rules outlined in *City of Pasadena* to find no unreasonable interference by the servient estate owner.  Here, the easement's purpose—giving the Grosmans access to their property—was undisputed.  So, all that was left to determine was whether Kasloff unreasonably interfered.

The Grosmans' argument that the trial court "essentially" extinguished their right to use the entire width of the easement mischaracterizes the court's holding.  The court expressly declined "Kasloff's invitation" to interpret the scope of the easement, which the court noted was Kasloff's attempt to "ask[] for a partial extinguishment of the easement."  The court explained, "'[n]o California case, or any logical extension of a California case, supports'" the idea that an owner of a servient estate can extinguish an easement through the owner's use of the property.

4. *The trial court did not err by finding the Grosmans failed to establish Kasloff unreasonably interfered with the easement's purpose*

The evidence does not compel a finding for the Grosmans as a matter of law.  (See *Sonic, supra,* 196 Cal.App.4th pp. 465-466).

14

It was uncontroverted the easement's purpose was to provide the Grosmans' ingress and egress to their property. The Grosmans acknowledged in the trial court and on appeal at oral argument that Kasloff's retaining wall and planter did not impede access to the Grosmans' property. So, as the trial court explained, "There is no evidence . . . that Ms. Kasloff has in any way interfered with the Grosmans' access to their land. As their property is currently developed, the Grosmans have complete and total ingress and egress to their property."

The Grosmans' argument that the trial court found their claim premature is a mischaracterization of the court's holding. The court never found the Grosmans' claim was premature. Instead, the court specifically said, "*On the facts before this court*, the court cannot find that Ms. Kasloff has unreasonably interfered with the purpose of the easement." The court was required to assess Kasloff's use based on the facts before it. As the court acknowledged, the fact that the Grosmans' *may* develop their property in a way that would render Kasloff's future use an unreasonable interference does not mean that Kasloff's current use is unreasonable.

5. *The trial court's acknowledgment that the Grosmans may sue Kasloff for injunctive relief in the future is not a cognizable issue for appeal*

In his statement of decision, the trial judge said, "Of course, in the future, facts could develop that might assist the Grosmans in meeting their burden of demonstrating unreasonable interference by Ms. Kasloff."

On appeal, both parties argue this comment was error. In fact, this is Kasloff's sole issue on cross-appeal.

15

But the comment is not reviewable because it was not an order, ruling or finding, but rather dicta. The comment did not decide an issue before the court or guarantee the success of a future lawsuit by the Grosmans against Kasloff.

B.    *The Trial Court Did Not Err by Finding the Grosmans Failed To Establish the Ficus Trees Were Planted Before 1993*

1.    *Standard of review*

As discussed, when a trial court finds a party failed to meet its burden, "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'" (*Sonic*, *supra*, 196 Cal.App.4th at p. 466.) And we view "all factual matters most favorably to the prevailing party and in support of the judgment," meaning all conflicts are resolved in favor of the respondent. (*Dreyer's Grand Ice Cream*, *supra*, 218 Cal.App.4th at p. 838.)

2.    *The evidence does not compel a finding in favor of the Grosmans as a matter of law*

"This is simply not a case where undisputed facts lead to only one conclusion," and it is not the function of this court to retry the case. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528-1529, disapproved of on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

On appeal, the Grosmans rely on five pieces of evidence: three photographs in exhibit 94, specifically 94-333, 94-335 and 94-336, and the testimonies of Clemons and Ruggles. But based on the record before us, this evidence is not dispositive.

The photographs do not compel a finding the ficus trees at issue existed before March 26, 1993. According to the cover letter

16

in exhibit 94, the "pictures show some of the trees that were later destroyed." But it is at best arguable when or where the photos were taken. For example, the trees in image 94-336 appear to have been planted in 2011. That image depicts the Grosmans' toddler grandson on a swing in front of hedges. Their grandson was born in 2011. Mellinger, an expert, testified the trees in the background were only one to two years old, and an invoice showed the Grosmans' gardener bought 122 ficus trees in 2011.

Likewise, the testimonies of Clemons and Ruggles do not compel a finding the ficus trees existed before March 26, 1993. Clemons said that when he visited the property during a 2013 survey, he saw the ficus trees near the property line were over six feet tall. But Clemons's testimony does not necessarily mean that the trees were planted before March 26, 1993. Similarly, Ruggles testified tall trees existed along the Grosmans' and Kasloff's property line between 1987 and 2004, but not that they were the ficus trees at issue.

C.   *The Trial Court Erred by Finding the Statement of Decision on the Equitable Issues Resolved the Legal Issue*

1.   *Relevant law and standard of review*

The meaning of a court order is determined by the whole order and, when necessary, the entire record: "'The true measure of an order . . . is not an isolated phrase appearing therein, but its effect when considered as a whole. [Citations.] In construing orders they must always be considered in their entirety, and the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing. If the language of the order be in any degree uncertain, then reference may be had to the circumstances surrounding, and the court's intention in the making of the same.'"

17

(*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1429-1430 (*Ins. Installment*).) "'The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect.'" (*Dow v. Lassen Irrigation Co.* (2013) 216 Cal.App.4th 766, 780.)

"The meaning of a court order or judgment is a question of law within the ambit of the appellate court." (*Ins. Installment, supra,* Cal.App.4th at p. 1429.) "We review questions of law under the independent standard of review." (*Fisher v. State Personnel Board* (2018) 25 Cal.App.5th 1, 14.)

2. *The statement of decision resolved only the equitable issues*

In his minute order, the subsequent judge found the trial judge's statement of decision on the equitable issues also resolved the one remaining legal issue between the parties. Specifically, the subsequent judge wrote that "the Grosmans' legal claims for damages against [Kasloff] are barred" "based upon the September 1, 2016 Statement of Decision with respect to the parties' equitable claims." According to the subsequent judge, the trial judge had "determined that [Kasloff] did not remove the ficus trees from [the Grosmans'] property. Therefore, [the Grosmans'] damage claims . . . based on those allegations are barred." The subsequent judge relied on this quote from the trial judge's statement of decision: "'[if] [sic] the trees were ripped out as claimed by the Grosmans, Mr. Mellinger opined that there would have been substantial disruption to the soil from removal for [sic] the root balls where the trees were allegedly removed. There were no holes in the soil where trees were allegedly removed. The Court finds Mr. Mellinger's testimony on this issue persuasive.'"

18

On appeal, the Grosmans argue the subsequent judge erred by finding the trial judge's statement of decision resolved more than the equitable issues.

We agree with the Grosmans.

"'It is well established that, in a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury . . . , and that if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury.'" (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 355.)

But here, the determination of the equitable issues was not dispositive of the legal issue of whether Kasloff removed the Grosmans' ficus trees. The trial judge did not have to decide the legal issue to resolve the equitable issues. And in any case, the judge's statement of decision did not explicitly decide the legal issue.

Reading the statement of decision as a whole, it is clear the trial judge intended to resolve only the equitable issues during its phase one bench trial and intended to have a separate trial on the remaining legal issue. The court explained that it had "bifurcated the equitable issues from the legal issues," and that although the court "heard the equitable issues without a jury," "[t]he legal issues remain to be tried to a jury." The court noted the limited scope of its bench trial: "the parties present[ed] three issues for determination by the court: (1) The Grosmans' claim related to Ms. Kasloff's construction of certain permanent structures (a wall and planter) on her property but within Grosmans' access easement; (2) Ms. Kasloff's fire lane injunction request related to vegetation encroaching onto her property . . . ; and (3) Ms. Kasloff's northern property line injunction request requiring the Grosmans to trim

19

the height of their ficus hedge." As a result, the court scheduled a "trial setting conference for the remaining legal issues in the cases."

In *Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399, 411 *(Darbun)*, the court of appeal held "the [trial] court's determination of the equitable issue was not dispositive of the legal issue of breach because the court, on its own, decided to limit the scope of the first phase to *exclude*" the issue of breach. (*Ibid.*) The appellate court explained, the trial court's limitation on the issue of breach meant "it was not acting as the proper fact finder on breach, [so] the court's statements relating to [the appellant's] breach did not foreclose jury determination on that issue." (*Ibid.*) "The court's finding of breach, if it was an actual ruling of the court, improperly usurped an issue that was reserved for the jury, which ultimately found in favor of [the appellant]. It was not necessary for the court to make a finding on breach in order to decide the availability of specific performance and . . . the court had made it clear that it was not doing so." (*Ibid.*)

This case is like *Darbun*. Most obvious, in both cases, the trial courts limited the scope of their phase one bench trial to an equitable issue or issues and excluded a legal issue. (See *Darbun, supra,* 239 Cal.App.4th at p. 411.) Here, before the bench trial, the trial court said, "The [e]quitable [i]ssues, *and only those facts,* will be tried to the Court as phase one." Also, in both cases, it was not necessary for the trial court to make a finding on the legal issue to decide the equitable issues. (See *ibid.*) Here, the trial court did not need to resolve whether Kasloff removed the Grosmans' ficus trees to determine whether either party was entitled to injunctive relief. Kasloff acknowledged this point in her trial brief: "We point out to the Court that the issues of the allegedly removed

20

ficus trees are not part of the 'equitable bundle' and we do not expect them to be litigated in the first phase of the trial." Here, as in *Darbun,* the trial court's determination of the equitable issues was not dispositive of remaining the legal issue.

      3.     *The remaining legal issue included only the Grosmans'*
              *damage claim for Kasloff's alleged removal of the*
              *Grosmans' ficus trees*

The Grosmans argue their remaining legal issues included damage claims against Kasloff for more than removing ficus trees. Their complaint also alleged Kasloff's welding of a post to the Grosmans' gate, and Kasloff's removing and destroying the Grosmans' chain-link fence, irrigation equipment and baseboards.

But the Grosmans forfeited this argument. First, as the Grosmans acknowledge, their written opposition to Kasloff's motion for entry of judgment was untimely. Second, in their opposition, the Grosmans did not argue legal issues or damages consisted of more than Kasloff's alleged removal of the ficus trees. Third, the only time the Grosmans discussed additional legal issues, damages or the complaint was at the hearing on the motion, which was too late. (See *Murray & Murray v. Raissi Real Estate Development, LLC* (2015) 233 Cal.App.4th 379, 383-384, 389, fn. 2 [explaining an argument "raised for the first time at the hearing on its motion . . . absent good cause . . . is unfair to opposing counsel and, in most circumstances, should not be condoned"].)

The Grosmans' contention they raised the additional legal issues or damage claims in their motion for reconsideration lacks merit. Their motion for reconsideration was improper, as discussed below, and consequently could not preserve an issue for appeal.

21

4. *The trial court did not abuse its discretion by denying the Grosmans' motion for reconsideration[11]*

Code of Civil Procedure section 1008, subdivision (a), allows parties to file a motion for reconsideration of an order "based upon new or different facts, circumstances, or law." "[T]he party seeking reconsideration must provide not only new evidence but also a satisfactory explanation for the failure to produce that evidence at an earlier time." (*Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342.)

The Grosmans failed to present new or different facts in their motion for reconsideration. Instead, they argued "the actual operative complaint or an accurate itemization of the Grosmans' damages claims" should suffice. But the complaint and the damage claims alleged in it were available since the case's inception.

The Grosmans also failed to give a satisfactory explanation for their failure to timely raise these facts in their written opposition to Kasloff's motion for entry of judgment. According to the Grosmans, the facts were not before the court because Kasloff had misrepresented the damage claims in her motion, the Grosmans' counsel failed to argue the complaint in the written opposition to Kasloff's motion, and a copy of the complaint was not in the courtroom during the hearing on Kasloff's motion. None of this excuses the Grosmans' tardiness. Once Kasloff served her motion, the Grosmans were on notice to file a written opposition,

---

[11] "An abuse of discretion standard applies to a court's denial of a motion for reconsideration." (*Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392, 408.)

22

raising any argument, law or facts they thought necessary.[12]  (See *Hennigan v. White* (2011) 199 Cal.App.4th 395, 406; *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1460 ["[T]he trial court denied a motion for reconsideration based on evidence that should have been included in the initial opposition to the motion but was not, and thus was not a proper basis for reconsideration"].)

The Grosmans' reliance on *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, and *Johnston v. Corrigan* (2005) 127 Cal.App.4th 553, is misplaced.  In *Kalivas*, the court of appeal reversed an order denying a motion for reconsideration of an order granting summary judgment against the appellant.  (*Kalivas*, at p. 1154.)  According to the appellate court, the appellant's failure to file an opposition or appear at the hearing on the motion for summary judgment was "excusable and resulted from an impermissible courtroom local rule." (*Ibid.*)  The appellant had been misled by local rules to believe that the hearing was canceled, and there was an order with the judge's signature stating "'the pending motion(s) is/are ordered off calendar.'" (*Id.* at p. 1161.)  In *Johnston,* the court of appeal affirmed an order granting a motion for reconsideration of an order denying a motion for attorney fees. (*Johnston,* at pp. 556-557.)  The appellate court explained the respondents had presented evidence in their motion for reconsideration that the trial court had failed to consider their earlier timely filing.  (*Id.,* at p. 556.)

None of those facts are present here.  In this case, the Grosmans had over a year to file an opposition and prepare for the

---

[12]     Kasloff served the Grosmans with her motion to enter judgment on March 21, 2018.

23

hearing on Kasloff's motion to enter judgment. Although their opposition was untimely, the court still considered it.

## DISPOSITION

The judgment and order granting the motion to enter judgment are reversed. The order, denying the Grosmans' request for injunctive relief relating to Kasloff's easement use and granting Kasloff's request for injunctive relief relating to the height of the Grosmans' ficus trees, is affirmed. The trial court is directed to set a trial on the Grosmans' damage claim against Kasloff for her alleged removal of the Grosmans' ficus trees. The parties are to bear their own costs on appeal.


IBARRA, J.[*]


We concur:


SEGAL, J., Acting P. J.


FEUER, J.


---

[*] Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.